UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,
ex rel. DR. JOSHUA AREHART,

               Relator-Plaintiff,

    v.

U.S. MEDICAL MANAGEMENT, LLC and
VPA, P.C.,

               Defendants.

Case No. 23-cv-1237-bhl

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

On September 19, 2023, Plaintiff-Relator, Dr. Joshua Arehart, filed this *qui tam* lawsuit alleging that Defendants U.S. Medical Management, LLC and VPA, P.C., violated the False Claims Act (FCA), 31 U.S.C. §3729, by performing, and billing Medicare for, medically unnecessary services. (ECF No. 1.) The case remained sealed until July 2024, when the United States notified the Court that it was not intervening in the action. (ECF Nos. 12 & 13.) Defendants then filed a motion to dismiss, to which Arehart responded by filing an amended complaint. (ECF Nos. 22 & 29.) Defendants then moved to dismiss the amended complaint. (ECF No. 32.) Because Arehart has failed to plead his fraud claims with the particularity required by Federal Rule of Civil Procedure 9(b) and has otherwise insufficiently pleaded his claims, Defendants' motion to dismiss will be granted.

### FACTUAL ALLEGATIONS[1]

Arehart worked as a medical doctor for Defendants from August 2018 to March 2022. (ECF No. 29 ¶¶31, 79.) He served as a primary physician, providing general healthcare to approximately 200 clients in their homes or nursing homes. (*Id.* ¶32.)

---

[1] Under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all well-pleaded facts in the complaint and draws all inferences in the plaintiff's favor. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011).

Arehart accuses Defendants of providing medically unnecessary physician visits and diagnostic tests and inappropriately billing the Medicare program for those services. (*See id.* ¶¶39–55.) He alleges that "Defendants regularly added patients to [his] schedule without his input" and "[f]requently, these visits were unwarranted, were not medically indicated, and were not necessary for the health of the patients." (*Id.* ¶¶40, 42.) He further contends that "Defendants assessed the need for patient visits internally using a risk-stratification model, which categorized patients as low, medium, or high-risk." (*Id.* ¶43.) For patients in the low-risk bracket, "assessments of the sort performed by Dr. Arehart were medically necessary every three months," but "Defendants would pressure Dr. Arehart to see patients who last received medical care slightly more than one month before the new visit" even though such visits were medically unnecessary. (*Id.* ¶¶45–46.)

Arehart identifies a January 5, 2022 "representative example" of the unnecessary medical visits. (*Id.* ¶57.) On that date, a group home cancelled his previously scheduled visits at the last minute, and a VPA representative "demanded that a scheduler fill Dr. Arehart's schedule with other patients without regard to their medical needs." (*Id.* ¶58.) He contends it was "clear" to him that the visits "were not medically indicated or reasonably necessary." (*Id.* ¶61.) Arehart further alleges that Defendants paid their healthcare providers bonuses "based in part on the amount of money paid to Defendants from Medicare for their services." (*Id.* ¶36.) He acknowledges that "bonus structures of this nature are not uncommon," but contends the structure "incentivizes providers to perform medically unnecessary procedures and laboratory tests." (*Id.* ¶¶ 38–39.)

On January 14, 2022, Arehart "reported to Defendant U.S. Medical Management's compliance hotline that he was being scheduled to make medically unnecessary patient visits" and that one VPA Practice Manager "was scheduling patients in violation of the Defendants' risk stratification care model." (*Id.* ¶¶71–72.) One month later, on February 15, 2022, Defendants suspended his employment "based on false claims that he documented a physical exam on a patient that he did not perform." (*Id.* ¶74.) Then, on March 4, 2022, Defendants' Chief Administrative Officer gave Arehart the option of quitting or being fired. (*Id.* ¶77.) Just days later, on March 8, 2022, Arehart informed Defendants that he was "ready, willing and able to continue his employment" but they nevertheless terminated his employment "in retaliation for his opposition to unlawful billing practices." (*Id.* ¶¶78–79.)

## LEGAL STANDARD

The FCA is an anti-fraud statute that imposes civil liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" paid by the government. 31 U.S.C. §3729(a)(1)(A)–(B). The FCA provides for a *qui tam* enforcement mechanism through which a private party (also known as a relator) can bring a lawsuit on behalf of the government to recover money that the government paid as a result of fraudulent claims. 31 U.S.C. §3730(b).

To establish liability for fraudulent presentment or fraudulent statement, an FCA relator must allege that (1) the defendant presented a statement to the government in order to receive money; (2) the statement was false; and (3) the defendant knew the statement was false. *See United States ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 822 (7th Cir. 2011); *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 777 (7th Cir. 2016). In addition, the defendant's misrepresentation must have been material to the government's payment decision. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 181 (2016). The Supreme Court has emphasized that this materiality requirement is "rigorous." *Id*.

As an anti-fraud statute, FCA claims are subject to the heightened pleading standard in Rule 9(b). *United States ex rel. Gross v. AIDS Rsch. All.-Chi.*, 415 F.3d 601, 604 (7th Cir. 2005). Under Rule 9(b), a party alleging fraud must "allege the circumstances of the fraud with factual particularity." *United States ex rel. Mamalakis v. Anesthetix Mgmt. LLC*, 20 F.4th 295, 301 (7th Cir. 2021). In the FCA context, Rule 9(b) requires that "[f]alse claim allegations must relate to actual money that was or might have been doled out by the government based upon actual and particularly-identified false representations." *Gross*, 415 F.3d at 605. More generally, the FCA relator must describe "the who, what, when, where, and how [of the fraud]: the first paragraph of any newspaper story." *United States ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009) (internal quotation marks omitted); *see also United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014) (the complaint must include the "identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated"). The level of particularity required depends on the facts of the case. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011). But, even in the

FCA context, a relator must "use some means of injecting precision and some measure of substantiation into their allegations of fraud." *Presser*, 836 F.3d at 776, 778 (cleaned up). At the same time, courts should not take an "overly rigid view" of Rule 9(b)'s requirements. *Id.* (quoting *Pirelli*, 631 F.3d at 442).

## ANALYSIS

I. **Arehart's FCA Claims Do Not Include Sufficient Specificity to Satisfy Rule 9(b)'s Heightened Pleading Standards.**

In counts one and two of the amended complaint, Arehart alleges FCA violations under the statute's "presentment" and "false statement" provisions, 31 U.S.C. §3729(a)(1)(A) & (B). Defendants argue that these claims must be dismissed because Arehart has not plausibly pleaded the statutory elements with the particularity required by Rule 9(b). (ECF No. 33 at 13.) Defendants contend that Arehart only vaguely describes an allegedly fraudulent scheme without providing the "supporting details" necessary to proceed. (*Id*. at 13–14.)

The Seventh Circuit applied Rule 9(b) to similar claims in *Presser*, a case that involved a nurse relator who alleged that her employer submitted false Medicare claims in violation of the FCA. 836 F.3d at 777–81. The relator in *Presser* alleged that her employer engaged in four different fraudulent practices: (1) requiring that all patients be seen by four different individuals, regardless of necessity; (2) mandating that clinic staff use a specific billing code in all assessments; (3) requiring all patients to submit to a urine screen during every visit; and (4) requiring patients to visit the clinic in person to pick up prescriptions or speak with a physician. *Id*. at 773. The district court dismissed the relator's claims under all four theories for non-compliance with Rule 9(b). *Id.* at 775. On appeal, the Seventh Circuit affirmed the dismissal of the FCA claims on the first, third, and fourth theories, but concluded the second theory had been pleaded with sufficient particularity. *Id.* at 781–82.

In reversing the district court on the second theory, the Court of Appeals explained that the allegations related to the use of a fraudulent billing code were sufficiently particular. *Id*. at 778. The Court emphasized that the relator had alleged that "almost all of [the defendant's] patients were on Title 19" and "the questionable practices and procedures [regarding billing code 90801] were applied to all patients at the clinic." *Id.* As a result, even though the relator did not provide facts showing a "specific request for payment" related to the billing code, the allegations sufficed because the facts alleged necessarily led to the "conclusion that the defendant had presented claims

to the Government," given that the fraudulent billing code was allegedly applied to all patients who were federally insured. *Id.* at 777–78 ("[A] plaintiff does not need to present, or even include allegations about, a specific document or bill that the defendants submitted to the Government.").

In affirming the district court's conclusion that the complaint failed to satisfy Rule 9(b) on the other three fraud theories, the Seventh Circuit explained that the relator had "provide[d] no medical, technical, or scientific context that would enable a reader of the complaint to understand why [the defendant's] alleged actions amount to unnecessary care forbidden by the statute." *Id.* at 779. Thus, the complaint failed to "provide any reasons *why* these treatments actually were unnecessary" beyond her personal view. *Id.* (emphasis in original). The Court explained that "without an ascertainable standard or more context, [the relator's] other allegations of fraud do not suffice" as the three policies could have "entirely innocent explanations." *Id.* at 780, 781.

Under the teaching in *Presser*, Arehart's allegations lack sufficient particularity to survive a motion to dismiss. His amended complaint asserts that Defendants "regularly" scheduled patient visits without his input and that "frequently" the visits were "unwarranted," "not medically indicated," and "not necessary for the health of the patients." (ECF No. 29 ¶¶40, 42.) He also alleges that Defendants directed and pressured providers to perform medical services that were not medically necessary and to certify otherwise to Medicare. (*Id.* ¶¶50–51.) These vague and conclusory allegations fall far from the particularized allegations of fraud required by Rule 9(b). Nowhere in the amended complaint is there any medical, technical, or scientific context that would explain why the bills were false or misleading, beyond his own subjective judgments. *See, e.g., Presser*, 836 F.3d at 780 (affirming district court's dismissal of FCA claims for lack of particularity where relator failed "to demonstrate how [the defendant's] policies compare[d] to other clinics or could otherwise be understood as 'usual'"). Arehart also does not allege a uniform, specific fraud—like the required use of an inapplicable billing code—that would support a reliable and objective theory that an improper procedure was applied to all patients insured by Medicare or Medicaid. Instead, like the relator in *Presser*, he simply presents his own view that the treatments were unnecessary and that the Medicare claims Defendants submitted were fraudulent, without any clear standard allowing for an evaluation of whether the alleged treatments were not medically necessary. (ECF No. 29 ¶¶41–42, 50–52.)

Arehart's allegations do not identify the specific patient whose visit was "unwarranted," "not medically indicated," or "not necessary." (*Id.* at ¶42.) Nor does he allege how or why any

patient visit was improper other than some patients being scheduled inconsistently with Defendants' own risk-stratification model. (*Id.* ¶62.) He provides no specifics concerning the medical conditions or health of any of the patients or otherwise explain in a non-conclusory fashion why the visits were not medically indicated. He does not allege why it was medically unnecessary to visit patients who received care slightly over a month ago but acknowledges that "monthly care could often be medically justified." (*Id.* ¶49.) Arehart's suspicions are not supported in any concrete or corroborated manner and therefore fail to make the fraud allegations plausible. A would-be relator must set out allegations of fraud with "precision and some measure of substantiation," establishing a necessary inference that false claims were submitted to the government beyond a mere subjective belief. *Presser*, 836 F.3d at 776 (citation omitted); *Pirelli*, 631 F.3d at 443, 446 ("The grounds for the plaintiff's suspicions must make the allegations *plausible*" and "flexibility in the face of information asymmetries should not be conflated with whistling past the rules of civil procedure." (emphasis in original)).

Arehart also fails to plead with specificity the implementation of the allegedly fraudulent scheme. He does not allege the "who, what, when, where, and how" of the alleged scheme. *See Lusby*, 570 F.3d at 853. He does not allege when the scheme was developed or implemented, who developed it or carried it out, where it was employed, or what types of patients were targeted. As to the "who," Arehart repeatedly alleges that "Defendants" took certain actions but does not offer any additional specifics. (*See* ECF No. 29 ¶¶ 46, 50, 51, 52, 54, 55.) The amended complaint fails to identify who regularly added patients to his schedule without his input, who pressured Arehart to conduct medically unnecessary visits, who specifically directed providers to perform medical services which were not medically necessary, who pressured providers to perform services which were not medically necessary, who pressured medical assistants to schedule medically unnecessary care, or who scheduled him to see patients more frequently than was medically necessary. (*Id.*); *see also Flanagan v. Bahal*, No. 12-2216 (NLH/JS), 2015 WL 9450826, at *5 (D.N.J. Dec. 22, 2015) (dismissing claim based on allegedly medically unnecessary treatments because relator "provide[d] no basis as to why these tests were medically unnecessary based on patient reported symptoms").

Arehart similarly offers only conclusory allegations that Defendants pressured him to see patients just more than one month after a prior visit even when Defendants' risk-stratification model indicated that patients should be seen every three months, and the patients had not requested

medical care or reported medical concerns. (ECF No. 29 ¶¶ 41–48.) This generic assertion is not enough to support a claim of fraud. *Presser*, 836 F.3d at 779–81 (finding that conclusory allegations of medical necessity failed to satisfy Rule 9(b)); *Mamalakis*, 20 F.4th at 301–02 ("generalized allegations" are insufficient under Rule 9(b)). Arehart cannot unilaterally excuse his failure to provide specifics by insisting that because he "personally reviewed the charges and determined there was no medical concern" he need not provide additional context to explain why the visits were medically unnecessary. (ECF No. 35 at 7.) His citation to *Presser* for this premise is misplaced. His allegations do not include the necessary "additional context providing reasons to question the appropriateness of [the defendant's] policies." *Presser*, 836 F.3d at 780. His allegations do not identify the specific fraudulent claims he contends Defendants submitted to Medicare, nor does he allege that all claims were fraudulent or that all of Defendants' patients were covered under Medicare. He thus fails to provide any clear or specific standard by which Defendants, or the Court, could evaluate his claims that the medical treatments were not necessary, and thus necessarily led to the submission of fraudulent Medicare claims. *Id.* at 779–81 (dismissing challenges to mental health clinic's policies because the complaint did not present allegations of fraud with sufficient particularity).

Arehart's claims are similar to those dismissed in *United States ex rel. O'Donnell v. America at Home Healthcare & Nursing Services, Ltd.*, No. 14-cv-1098, 2017 WL 2653070 (N.D. Ill. June 20, 2017). In *O'Donnell*, the relator claimed that the defendants had artificially inflated bills to the government by increasing patient visits without regard to medical necessity. *Id.* at *2–3. In dismissing the claim for lack of particularity, the court noted that the relator had "fail[ed] to identify any particular patients with inflated visit frequency" and "sp[oke] almost entirely in generalities." *Id.* at *12. The Court also found that references to conduct occurring during a general period of employment did not satisfy Rule 9(b). *Id.* Where the relator did identify the date of specific instances when an employee was asked to increase patient visits, the court still did not find the amount of detail sufficient, as there were no allegations suggesting that the requests were actually followed. *Id.* In this case, Arehart does not identify any patients, uses generalities (*e.g.,* "regularly," "[t]hroughout [Relator's] employment," and "regular practice"), (ECF No. 29 ¶¶40, 54, 70), and does not indicate whether he actually conducted the scheduled but medically unnecessary visits, while acknowledging that "monthly care could often be medically justified," (*id.* ¶¶49, 54). Arehart also alleges that Defendants' bonus structure incentivized medical

providers to perform medically unnecessary services, (*id.* ¶36), but fails to provide any factual support for that allegation. He does not identify any unnecessary medical service or test or actually allege that he or any other medical provider ever ordered any unnecessary test. Because Arehart fails to plead fraud with requisite particularity, counts one and two will be dismissed.

## II. The Amended Complaint Fails to Allege the Presentment of False Claims for Payment.

Arehart also fails to plead that any specific false claims were actually submitted to the government. Nor does he identify any representative false claims. The Seventh Circuit has emphasized that a relator must allege "specific representative examples" of false claims to avoid dismissal. *See Mamalakis*, 20 F.4th at 302. Rather than attempt to identify examples of false claims, Arehart relies on *Presser* to argue that he has satisfied the presentment requirement through "general allegations" that Defendants received government funds and that "the fraudulent practices were commonplace." (ECF No. 35 at 9.) Arehart's reliance on *Presser* is again misplaced and he understates the pleading standard applicable to false presentment claims in this Circuit.

In *Lusby*, the relator alleged that Rolls-Royce defrauded the government by charging it for deficient aircraft parts. 570 F.3d at 850–51. The relator knew that Rolls-Royce falsely certified that the parts met the government's specifications, and that Rolls-Royce shipped them to the government and received payment in return. *Id.* at 853–54. The Seventh Circuit held that the allegations were sufficient to allow an inference that false claims were submitted, despite the relator's lack of invoices for those parts, *i.e.*, actual false claims. *Id.* at 854. Similarly in *Presser*, the Seventh Circuit held that the relator's complaint alleged false claims with particularity when, with respect to the use of inapplicable billing code, the complaint alleged "that almost all of [the defendant's] patients were on Title 19 and . . . dealt with Medicare" and made clear that "the questionable practices and procedures were applied to all patients at the clinic." 836 F.3d at 778. The Seventh Circuit concluded that using a specific billing code on a reimbursement form constituted a representation that a "full psychological assessment[] by a therapist or an evaluation by a psychiatrist" had taken place. *Id.* The clinic, however, had discontinued psychiatric evaluations and therefore, the representation was plausibly false in light of allegations that no assessment had been conducted. *Id.* Because the clinic billed Medicaid "for a completely different treatment" than what was provided, the claims made "express false statements," not just representations rendered misleading by the omission of material information. *Id.* at 779. The

Court recognized that the alleged facts "necessarily" established the conclusion that the defendant had presented false claims. *Id.*

The allegations deemed sufficient in *Lusby* and *Presser* stand in stark contrast to the allegations that Arehart offers here. Arehart alleges in general fashion that Defendants "significantly fund their operations and their employees through receipt of Medicaid and Medicare dollars." (ECF No. 29 ¶4.) But he offers no specifics beyond this contention. Arehart's conclusory allegations lack the specificity of those deemed sufficient in *Lusby*, where the relator had knowledge of falsely certified deficient aircraft parts shipped for payment, 570 F.3d at 853–54, and *Presser*, where the relator alleged that the clinic's patients were almost all on Medicaid and questionable practices and procedures were applied to all patients, 836 F.3d at 778. Moreover, Arehart offers only the vague allegation that Defendants "significantly fund their operations and their employees through receipt of Medicaid and Medicare dollars." (ECF 29 at ¶4.) Arehart does not allege that "all" or even "almost all" of Defendants' patients were covered by Medicare or Medicaid, as did the relator in *Presser*.

Arehart's allegations that he was "pressured" to make material misrepresentations to Medicare about the need to visit unidentified patients, (*id.* ¶¶57–65), are also insufficient. Arehart does not allege specific facts establishing that false claims were submitted to the government. He does not allege whether he actually conducted the visits on January 5, 2022, or whether he made material misrepresentations to Medicare. Accordingly, the facts alleged do not necessarily lead the Court to the conclusion that Defendants presented false claims to the government for payment. *See United States v. Heritage Operations Grp.*, 622 F. Supp. 3d 679, 689–90 (N.D. Ill. 2022) (dismissing a complaint that provided "no details about when Defendants submitted fraudulent claims, or who submitted the false claims on behalf of Defendants, or how many claims they submitted, or how much money Defendants received" and relied on only "[t]wo conclusory sentences about the submission of false claims"). Arehart has failed to plead the presentment element of his FCA claims, and for this additional reason, the Court will dismiss count one and count two of the amended complaint.

### III. The Amended Complaint Fails to State an FCA Conspiracy or Retaliation Claim.

Arehart alleges two other forms of FCA violations. In count three, he claims that Defendants conspired to violate the FCA, in violation of 31 U.S.C. §3729(a)(1)(C). (ECF No. 29 ¶87.) In count four, Arehart claims that his discharge violated the FCA's retaliation provisions.

(*Id.* ¶79, 88–91.) Because the amended complaint fails to adequately allege the FCA violations in these counts, Defendants' motion to dismiss will be granted as to these claims as well.

Pursuant to 31 U.S.C. §3729(a)(1)(C), a party violates the FCA when they conspire to commit a violation of particular subparagraphs of the FCA, including subparagraph (a)(1)(A) or (B). To plead conspiracy, Arehart must allege that (1) one or more people agreed to have the government pay a fraudulent claim; (2) one or more of the conspirators performed any act to have the claim paid; and (3) the government suffered damages as a result of the claim. *See United States ex rel. Baer v. Ludden*, No. 13-cv-223-jdp, 2016 WL 1259432, at *6 (W.D. Wis. Mar. 30, 2016) (citing *United States ex rel. Kalec v. NuWave Monitoring, LLC*, 84 F. Supp. 3d at 793, 800 (N.D. Ill. 2015)). Arehart, however, does not adequately allege an underlying FCA violation. Without any underlying violation, his FCA conspiracy claim fails as well. *Id.*; *see also Singer v. Progressive Care, SC*, 202 F. Supp. 3d 815, 828 (N.D. Ill. 2016).

The conspiracy claim also fails for an additional reason. The amended complaint provides no specific allegations of any agreement between or among any of the Defendants. Arehart argues that Defendants "worked together to present fraudulent claims for billing to Medicare and to create false records in support of those claims." (ECF No. 35 at 12–13 (citing ECF No. 29 ¶87).) He alleges in the amended complaint that Defendants' actions "constituted conspiracies to violate the False Claims Act" by presenting false claims for Medicaid and Medicare money, making false records in support of such claims, and avoiding obligations to refund Medicaid and Medicare for overpayments and/or overbilling. (ECF No. 29 ¶87.) But this is a mere conclusory allegation and lacks the factual specificity needed to state a conspiracy claim. *See, e.g., Singer*, 202 F. Supp. 3d at 828 (N.D. Ill. 2016) ("Singer also fails to plead each Defendant's role in the conspiracy sufficiently. He lumps all Defendants into a single act of conspiracy, rather than describing each Defendant's role . . . ."). The Court will dismiss count three of the amended complaint.

The FCA also prohibits retaliation in employment against a person who makes an FCA claim. 31 U.S.C. §3730(h) ("Any employee who is discharged . . . because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section . . . shall be entitled to all relief necessary to make the employee whole."). To survive a motion to dismiss, a complaint alleging an FCA retaliation claim must contain factual allegations that, if proven, would establish that (1) the plaintiff was acting in furtherance of an FCA enforcement action or other efforts to stop violations of the FCA, (2) the employer knew the plaintiff was

engaged in protected conduct, and (3) the employer was motived to take an adverse employment action against the plaintiff because of the protected conduct. *Singer*, 202 F. Supp. 3d at 828. Because Arehart has failed to state a claim with respect to his claims under §3729(a)(1)(A) and (B), his FCA retaliation claim fails as well. *United States ex rel. McGinnis v. OSF Healthcare Sys.*, No. 11-cv-1392, 2014 WL 378644, at *8 (C.D. Ill. Feb. 3, 2014) ("Without finding that the Plaintiff has sufficiently pled the claims for reimbursement were fraudulent or ever presented to the government, the Court cannot conclude that the allegations support a finding that Plaintiff was acting in furtherance of an FCA enforcement action or other efforts to stop violations of the FCA.").

Arehart acknowledges that his "complaints d[id] not directly invoke the FCA" but argues that an "internal complaint that an employer is improperly submitting claims for funds can trigger FCA protections." (ECF No. 35 at 19–20 (citing *Fanslow v. Chi. Mfg. Ctr., Inc.*, 384 F.3d 469, 481 (7th Cir. 2004)).) *Fanslow* is inapplicable to Arehart's case. In *Fanslow*, the Seventh Circuit recognized that an employee raising internal concerns about the employer "submitting claims for funds" to the government that "were really being diverted to . . . impermissible uses" could trigger the FCA's protection against retaliation. 384 F.3d at 480. But Arehart does not allege that he raised any concerns about submitting false claims for payment to the government that could serve as protected activity under the FCA. Instead, Arehart raised concerns that he was scheduled to perform patient visits that he believed were not medically necessary and that violated Defendants' risk stratification model. *Fanslow* is therefore distinguishable.

Arehart must allege and ultimately prove that Defendants retaliated against him *because of* his actions taken in furtherance of a *qui tam* action, not merely that they retaliated against him because he discovered or complained of fraud. *See United States ex rel. Rockey v. Ear Inst. of Chi., LLC*, 92 F. Supp. 3d 804, 826–27 (N.D. Ill. 2015). While Arehart alleges that he expressed concerns to Defendants' compliance hotline that he was being scheduled to make unnecessary medical visits and scheduling patients in violation of Defendants' risk stratification care model, (ECF No. 29 ¶¶71–72), he does not allege that Defendants fired him because of his role in furtherance of a *qui tam* action.

Arehart's opposition offers no response to Defendants' argument that he fails to allege that they were on notice of any protected activity. Arehart argues that "there can be no doubt Defendants knew of Dr. Arehart's protected report, because Dr. Arehart directly pled he made the

report to the Defendants." (ECF No. 29 at 19.) Arehart's assertion ignores Seventh Circuit precedent that in order to establish the notice element, "the employee must, at least to some degree, couch [his] concerns or investigation in terms of funds [his] employer fraudulently obtained from the government." *Luckey v. Baxter Healthcare Corp.*, 2 F. Supp. 2d 1034, 1055 (N.D. Ill. 1998), *aff'd*, 183 F.3d 730 (7th Cir. 1999). The amended complaint alleges no such notice. The Court will therefore dismiss count four of the amendment complaint.

## CONCLUSION

Defendants' motion to dismiss is granted and Arehart's claims under the False Claims Act are dismissed. Because the Court dismisses Arehart's amended complaint as insufficiently pled under the heightened pleading requirements of Rule 9(b), the Court declines to address Defendants' alternative grounds for dismissal, namely that Arehart's claims are barred by the FCA's public disclosure bar and that the FCA's *qui tam* provision is unconstitutional. Ordinarily, leave to amend should be given after granting a motion to dismiss the original complaint filed in a case. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015). Arehart, however, has already had an opportunity to amend the complaint. Faced with Defendants' initial motion to dismiss, Arehart's amended complaint pleaded vague and conclusory allegations insufficient to plead fraud, conspiracy or retaliation. The Court finds that any further amendment would be unduly prejudicial to Defendants, who have been subjected to Arehart's allegations of fraud for over two years. Accordingly, the Court will not allow Arehart a third opportunity to file a sufficient complaint. The Clerk of Court will be directed to close this case.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, ECF No. 32, is **GRANTED** and this case is **DISMISSED with prejudice**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on December 18, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge